UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

L3HARRIS TECHNOLOGIES, INC.,
a Delaware corporation,

        Plaintiff,

vs.

                                      Case No. _____

GENERAL ELECTRIC CO.,
a New York corporation,

        Defendant.

_____

## COMPLAINT (DECLARATORY RELIEF REQUESTED) AND DEMAND FOR JURY TRIAL

     Plaintiff, L3HARRIS TECHNOLOGIES, INC. ("L3Harris"), formerly known as HARRIS CORP. ("Harris"), through its undersigned counsel, submits this Complaint against GENERAL ELECTRIC CO. ("GE"), and alleges as follows:

### NATURE OF THE ACTION

    1.    This is a civil action for a declaratory judgment pursuant to 28 U.S.C. § 2201 determining that L3Harris is the rightful owner of certain assets worth millions of dollars, and for money damages and other relief, arising from, *inter alia*, GE's false claims of ownership of the assets, GE's deceptive conduct

relating to the assets, and for GE's tortious interference with L3Harris's lawful disposition of those assets.

## PARTIES

2.      Plaintiff L3Harris is a Delaware corporation with its principal place of business in Melbourne, Florida, located within this District.

3.      L3Harris was formerly known as Harris Corporation prior to the merger between Harris Corporation and L3 Technologies, Inc. on June 29, 2019.

4.      On information and belief, Defendant GE is a New York corporation with a principal place of business at 5 Necco Street, Boston, Massachusetts, 02210. GE does business throughout the United States including in the Middle District of Florida.

## JURISDICTION AND VENUE

5.      This Court has complete diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a). L3Harris is a corporation incorporated under the laws of the state of Delaware with its principal place of business in the state of Florida. GE is a corporation organized under the laws of New York with its principal place of business in the state of Massachusetts. In addition, the amount in controversy, exceeds the sum of $75,000, exclusive of interest and costs.

- 2 -

6.      This Court has personal jurisdiction over GE because, among other reasons, GE operates, conducts, engages in and carries on a business in Florida and in this District, it maintains offices and facilities in Florida and in this District, and it has committed tortious acts against L3Harris in Florida and in this District.  Further, GE is engaged in substantial and not isolated activity in Florida, both interstate and intrastate.

7.      Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events giving rise to the claim occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and GE is subject to personal jurisdiction in this District because GE has a regular and established place of business in this District.

## **FACTUAL ALLEGATIONS**

8.      An IP address is a numerical label (*e.g.*, 123.45.6.7) assigned to each device connected to a computer network that uses the Internet Protocol (IP) for communication.  An IP address serves two main functions: host or network interface identification and location addressing.

9.      Since at least December 21, 1989, L3Harris and/or Harris, through its division Harris Controls and Composition and/or successor business units, has

maintained, controlled, and held all of the right, title, and ownership interests in a block of IP addresses that can be referred to as the "192.68.26.0/24 Block." The 192.68.26.0/24 Block includes all of the IP addresses within the range 192.68.26.0 through 192.68.26.255, which is 256 unique IP addresses, often called a "Class C" IP address range.

10.     Since at least July 19, 1991, L3Harris and/or Harris, through its division Harris Controls and Composition and successor business units, has maintained, controlled, and held all of the right, title, and ownership interests in a block of IP addresses that can be referred to as the "147.90.0.0/16 Block." The 147.90.0.0/16 Block includes all of the IP address within the range 147.90.0.0 through 147.90.255.255, which is 65,536 unique addresses, often called a "Class B" IP address range.

11.     The IP addresses within the 147.90.0.0/16 and 192.68.26.0/24 Blocks are all "static" IP addresses. Static IP addresses are addresses that do not change and are specifically allocated to an owning organization. Conversely, "dynamic" IP addresses are assigned to a device by a network, within the static IP address range that was allocated to the owning organization, when the device connects to the network. Dynamic IP addresses change over time. In general, static IP addresses have value, and dynamic IP addresses do not.

4891-2000-8849.3

12.     The 147.90.0.0/16 and 192.68.26.0/24 Blocks consist of a type of IP address known as Internet Protocol (IP) version 4, or IPv4. IPv4 was developed in the early 1980s.

13.     An IPv4 address is four numbers, each of which range from 0 to 255 and is separated by periods.

14.     The amount of available IPv4 addresses is finite and there are approximately four billion IPv4 addresses that can be assigned at any time.

15.     Presently, the administration of IPv4 addresses is overseen by the American Registry for Internet Numbers ("ARIN"). ARIN was formed in 1997. ARIN is a non-profit, member-based organization and the regional internet registry for, among other locations, the United States.

16.     There are two types of IPv4 addresses: legacy addresses and non-legacy addresses. Legacy IPv4 addresses are those that were assigned prior to ARIN's formation.  One distinguishing feature of legacy versus nonlegacy IPv4 addresses is that owners of legacy addresses have not entered into any agreement with ARIN regarding the rights of the owner to use, transfer, or maintain its legacy addresses.

17.     The owners of legacy IP addresses can transfer their interest in those addresses.

4891-2000-8849.3

18.     Because of the growth of the Internet, there are no unallocated IPv4 addresses available and all IPv4 addresses have been depleted.

19.     As a result of their depletion, IPv4 addresses have become a valuable commodity that can be sold in blocks in private transactions.

20.     The 147.90.0.0/16 Block and the 192.68.26.0/24 Block consist entirely of legacy IPv4 addresses.

21.     Currently, the market value of the 147.90.0.0/16 and 192.68.26.0/24 Blocks is about $3.4 million.

22.     The 192.68.26.0/24 and 147.90.0.0/16 Blocks, since December 21, 1989 and July 19, 1991, respectively, have been owned, controlled, and maintained by Harris and/or L3Harris.

23.     Since December 21, 1989 and July 19, 1991, respectively, Harris and/or L3Harris have had administrative access to, and control of, the servers hosting the 192.68.26.0/24 and 147.90.0.0/16 Blocks.

24.     On or about July 7, 1995, Harris and GE entered into a limited liability company agreement (the "1995 LLC Agreement") to create GE-Harris Railway Electronics, LLC (the "Railway Company").

4891-2000-8849.3

25.     On or about July 7, 1995, Harris, GE, and the Railway Company entered into an agreement (the "1995 Transaction Agreement")[1] that, *inter alia*, specifically set forth the assets both Harris and GE would transfer to the Railway Company as part of its formation.

26.     The assets Harris transferred to the Railway Company in accordance with 1995 Transaction Agreement were expressly set forth in the Harris Disclosure Schedule attached to the 1995 Transaction Agreement.

27.     Section 3.01(c) of the 1995 Transaction Agreement stated that Harris would "transfer or cause to be transferred to the [Railway] Company all Harris Transferred Assets."

28.     The 1995 Transaction Agreement defined "Harris Transferred Assets" as meaning:

> (i) Harris Contracts identified on the Harris Disclosure Schedule as being included in the Harris Transferred Assets together with all rights of Harris thereunder and all amounts received or to be received thereunder (including, without limitation, progress payments, but specifically excluding Open Contract Excluded Revenues); and

> (ii) the capital equipment and other personal property identified as such in the Harris Disclosure schedule.

---

[1] The confidential agreements referenced herein are well known to the parties and are in the possession of GE.

29.    Section 1 of the Harris Disclosure Schedule identified the Harris Contracts to be transferred to the Railway Company.

30.    Section 2 of the Harris Disclosure Schedule was titled "Additional Harris Transferred Assets" and identified all capital equipment and personal property to be transferred to the Railway Company.  The assets to be transferred were identified as follows:

- Capital Equipment – Railroad Products, list dated 3/31/95 (attached);

- Capital Equipment – Advance Railway Systems, list dated 6/27/95 (attached); and

- Trademarks: *Locotrol* and *Probe*.

31.    Neither Section 2 of the Harris Disclosure Schedule nor any of the referenced attached lists included any IP addresses among the list of assets transferred from Harris to the Railway Company.

32.    The 1995 Transaction Agreement specified the transfer of enumerated assets from Harris to the newly formed Railway Company and did not transfer any business units and/or divisions, wholly or in part, from Harris to the Railway Company.

33.     The 1995 Transaction Agreement did not, either explicitly or implicitly, transfer, or otherwise assign, any IP Addresses (including the 192.68.26.0/24 and 147.90.0.0/16 Blocks) to GE or to the Railway Company.

34.     On or about July 7, 1995, Harris and the Railway Company entered into an agreement (the "Harris Transfer Agreement") to "effect the transfer to the [Railway] Company of the Harris Transferred Assets and the assumption by the Company of the Harris Transferred Assets." The Harris Transfer Agreement did not transfer any assets to the Railway Company other than those explicitly listed in the Harris Disclosure Schedule. *See, supra,* ¶¶ 28-31

35.     On or about July 7, 1995, Harris and the Railway Company entered into an agreement (the "Harris Administrative Services Agreement") where Harris agreed to provide certain administrative services to the Railway Company in accordance with the Harris Administrative Services Agreement.

36.     More specifically, the Harris Administrative Services Agreement stated that "Harris shall provide . . . administrative services as described in Exhibit A attached hereto . . . at [Harris'] then applicable labor costs and burden rates applicable to comparable work and the labor categories furnished."

37.     The administrative services described in Exhibit A of the Harris Administrative Services Agreement included "Information Systems."

38.     The Harris Administrative Services Agreement did not transfer ownership of any Harris information systems.

39.     The Harris Administrative Services Agreement did not transfer ownership of the 192.68.26.0/24 and 147.90.0.0/16 Blocks to the Railway Company, or to GE.

40.     The Harris Administrative Services Agreement was intended to provide services to the newly formed Railway Company until the Railway Company could establish its own administrative services.

41.     The Harris Administrative Services Agreement contained a provision that it would terminate approximately one year after it was executed, on June 30, 1996, unless terminated earlier or extended by the parties.

42.     On or about July 7, 1995, Harris and the Railway Company entered into an agreement (the "Harris Technology License Agreement") where Harris agreed to license certain patent rights and technical information to the Railway Company.   The Harris Technology License Agreement did not transfer or otherwise assign the 192.68.26.0/24 and 147.90.0.0/16 Blocks to the Railway Company, or to GE.

43.     During the initial start-up period of the Railway Company, Harris may have temporarily used the 192.68.26.0/24 and 147.90.0.0/16 Blocks in

4891-2000-8849.3

supporting the Railway Company, under the Harris Administrative Services Agreement, while the Railway Company was operating out of Harris' facilities in Melbourne, Florida.  At no time, however, was ownership of IP addresses within the 192.68.26.0/24 and 147.90.0.0/16 Blocks assigned or otherwise transferred to the Railway Company, or to GE.

44.     In 1997, VFC Capital, a wholly owned subsidiary of Harris, acquired the Harris owned portions of the Railway Company.

45.     By the end of 2001, Harris and VFC Capital, had divested its interest in the Railway Company without transferring or otherwise assigning the 192.68.26.0/24 and 147.90.0.0/16 Blocks to the Railway Company, GE, or any other entity.

46.     Prior to the 2001 divestiture, the Railway Company moved to a new location, and, on information and belief, at that time stopped any temporary use of any IP addresses within the 192.68.26.0/24 and 147.90.0.0/16 Blocks and obtained its own IP addresses.

47.     Any Railway Company use of IP addresses within the 192.68.26.0/24 and 147.90.0.0/16 Blocks ceased before Harris and VFC Capital divested their interest in the Railway Company.

4891-2000-8849.3

48.     In 2021, L3Harris sought to sell the 192.68.26.0/24 and 147.90.0.0/16 Blocks.  L3Harris intended to use a broker specializing in this service called Hilco Streambank.

49.     The 192.68.26.0/24 and 147.90.0.0/16 Blocks were registered by ARIN under the name "Harris Controls and Composition," a division of Harris. Prior to the sale of the 192.68.26.0/24 and 147.90.0.0/16 Blocks, L3Harris sought to update the information in the ARIN registry so that it reflected the current corporate entity, L3Harris.

50.     During the process of updating the ARIN registry, ARIN informed L3Harris that there was a dispute relating to the ownership of the 147.90.0.0/16 and 192.68.26.0/24 Blocks, and that GE was also claiming ownership of these Blocks.

51.     Upon information and belief, GE has sold blocks of legacy IP addresses in the past and intended to claim ownership of the 147.90.0.0/16 and 192.68.26.0/24 Blocks so that it could sell them itself.

52.     L3Harris subsequently contacted representatives from GE in the hopes of having GE assure ARIN that GE had no ownership interest in the 147.90.0.0/16 and 192.68.26.0/24 Blocks.

4891-2000-8849.3

53.     Representatives from L3Harris and GE engaged in discussions regarding ownership of the 147.90.0.0/16 and 192.68.26.0/24 Blocks until about February 2023, when GE representatives ceased communicating with L3Harris for a period of nine months.

54.     ARIN informed L3Harris that it does not resolve ownership disputes, and that unless it and GE can come to an agreement regarding the ownership of the 147.90.0.0/16 and 192.68.26.0/24 Blocks, ARIN would require a court order determining the rightful owner of these Blocks in order for ARIN to transfer ownership or correct its ownership records.

55.     Hilco Streambank informed L3Harris that it cannot sell the 147.90.0.0/16 and 192.68.26.0/24 Blocks until the ownership issue is resolved.

56.     Although GE's basis for alleging ownership of the 147.90.0.0/16 and 192.68.26.0/24 Blocks has never been clearly articulated, GE appears to allege that L3Harris and/or its predecessor transferred ownership of these addresses to the Railway Company as part of the joint venture formation.

## COUNT I – DECLARATORY JUDGMENT

57.     L3Harris adopts, realleges and incorporates paragraphs 1 – 56 as though fully alleged and set forth herein.

58.     Under the Declaratory Judgment Act, federal courts have the power to declare rights and other legal relations of any interested party, whether or not further relief is or could be claimed. 28 U.S.C. § 2201.

59.     There exists an actual, ripe, bona fide and justiciable controversy between L3Harris and GE regarding L3Harris' right, title, and interest in the 147.90.0.0/16 and 192.68.26.0/24 Blocks.

60.     L3Harris is the rightful owner of the 147.90.0.0/16 and 192.68.26.0/24 Blocks, its predecessor having both legal and equitable title. Neither L3Haris nor any of its predecessor entities have transferred this ownership interest to either the Railway Company or to GE.

61.     Despite and contrary to L3Harris' claim of ownership of the 147.90.0.0/16 and 192.68.26.0/24 Blocks, GE claims and has acted as if it owns the 147.90.0.0/16 and 192.68.26.0/24 Blocks, by, *inter alia*, requesting that ARIN register the 147.90.0.0/16 and 192.68.26.0/24 Blocks in its name, and thus prohibiting L3Harris from selling the 147.90.0.0/16 and 192.68.26.0/24 Blocks.

62.     Pursuant to the Declaratory Judgment Act, the Court should declare that L3Harris owns all rights, title, and interest in and to the 147.90.0.0/16 and 92.68.26.0/24 Blocks.

63.     Pursuant to the Declaratory Judgment Act, the Court should declare that GE has no ownership interest in the 147.90.0.0/16 and 192.68.26.0/24 Blocks, and that neither GE nor the Railway Company acquired these Blocks from Harris under the 1995 Transaction Agreement, or any other agreement entered into between Harris, GE, and/or the Railway Company.

64.     Pursuant to the Declaratory Judgment Act, the Court should declare that L3Harris is the legal and equitable owner of the 147.90.0.0/16 and 192.68.26.0/24 Blocks, including but not limited to, the IP addresses within the 147.90.0.0/16 and 192.68.26.0/24 Blocks.

## **COUNT II – COMMON LAW UNFAIR COMPETITION**

65.     L3Harris adopts, realleges and incorporates paragraphs 1 – 56 as though fully alleged and set forth herein.

66.     GE deceptively and/or fraudulently represented to ARIN that it was the rightful owner of the 147.90.0.0/16 and 192.68.26.0/24 Blocks.

67.     GE and L3Harris are competitors, in both the area of defense contracting as well as the subject matter of this complaint, which is the sale of legacy IP addresses.

4891-2000-8849.3

68.     Potential purchasers of the 147.90.0.0/16 and 192.68.26.0/24 Blocks would be confused by the competing claims before ARIN regarding ownership of these Blocks.

69.     GE's business conduct is contrary to honest practice in commercial matters.

70.     GE's deceptive and/or fraudulent conduct has caused L3Harris to suffer damages.

71.     L3Harris has been directly and proximately damaged by GE unfair competition and is entitled to recover money damages, in an amount to be determined at trial, but in no event less than $3,400,000. GE committed these tortious and unfair acts intentionally, willfully, and maliciously, thereby justifying an award of punitive damages.

## COUNT III – UNFAIR COMPETITION UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

72.     L3Harris adopts, realleges and incorporates paragraphs 1 – 56 as though fully alleged and set forth herein.

73.     GE is engaged in trade and commerce as defined by Section 501.203(8), Florida Statutes.

4891-2000-8849.3

74.     ARIN and potential purchasers of the subject IP address are "consumers" as that term is defined by the Florida Deceptive and Unfair Trade Practices Act.

75.     GE engaged in unfair and deceptive trade practices under Florida's Deceptive and Unfair Trade Practices Act by, *inter alia*, causing a likelihood of confusion to consumers such as ARIN and among potential purchasers of IP addresses by improperly and falsely claiming to be the owner of the 192.68.26.0/24 and 147.90.0.0/16 Blocks; misleading ARIN and consumers by causing ARIN to believe that GE had approval to register ownership of the 192.68.26.0/24 and 147.90.0.0/16 Blocks in GE's name; requesting ARIN to register the 192.68.26.0/24 and 147.90.0.0/16 Blocks in GE's name; as well as engaging in other conduct that created a likelihood of consumer confusion concerning the ownership and rights to the 192.68.26.0/24 and 147.90.0.0/16 Blocks.

76.     L3Harris had a reasonable expectancy of entering a valid business relationship under which Hilco Streambank would act as L3Harris' broker and sell, license, transfer, or otherwise dispose of the 192.68.26.0/24 and 147.90.0.0/16 Blocks on L3Harris' behalf so that L3Harris could profit from the transaction.

4891-2000-8849.3

77.     GE has violated Section 501.204, Florida Statutes, as its actions constitute unfair methods of competition, unconscionable acts or practices and unfair and deceptive acts or practices in the conduct of trade and commerce.

78.     By engaging in this wrongful conduct, GE acted unfairly and prevented L3Harris from legitimately earning revenue from the 192.68.26.0/24 and 147.90.0.0/16 Blocks.

79.     GE's conduct was likely to deceive consumers acting reasonably in the same circumstances regarding the ownership of the 192.68.26.0/24 and 147.90.0.0/16 Blocks and L3Harris' right to same.

80.     GE's deceptive and wrongful conduct has caused L3Harris to suffer damages.

81.     L3Harris has been directly and proximately damaged by GE's deceptive and unfair conduct and is entitled to recover money damages, including punitive damages, in an amount to be determined at trial, but in no event less than $3,400,000.  In addition, L3Harris seeks an award of attorney's fees pursuant to Section 501.2105(i), Florida Statutes.

## COUNT IV – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

82.     L3Harris adopts, realleges and incorporates paragraphs 1 – 56 as though fully alleged and set forth herein.

- 18 -

4891-2000-8849.3

83.     L3Harris has a business relationship with Hilco Streambank, and through Hilco Streambank, with prospective buyers of the 192.68.26.0/24 and 147.90.0.0/16 Blocks. L3Harris also has a business relationship with ARIN, as the designated entity that acts as the registrar for IP addresses.

84.     L3Harris has a reasonable probability of business and economic benefit in connection with its relationships with Hilco Streambank, potential buyers, and ARIN.

85.     GE knows that L3Harris is engaged in efforts to sell the 192.68.26.0/24 and 147.90.0.0/16 Blocks to prospective buyer(s), either with or without a broker.   GE intentionally and wrongfully interfered with that opportunity and relationship by requesting that ARIN register the 192.68.26.0/24 and 147.90.0.0/16 Blocks in GE's name.

86.     GE's actions have caused L3Harris to suffer damages, and L3Harris is entitled to recover money damages, including punitive damages, in an amount to be determined at trial, but in no event less than $3,400,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant including:

87.     A declaration that GE has no ownership interest in the 147.90.0.0/16 and 192.68.26.0/24 Blocks, and that neither GE nor the Railway Company acquired these Blocks from Harris Corp. under the 1995 Transaction Agreement, or any other agreement entered into between Harris, GE, and/or the Railway Company.

88.     A declaration that L3Harris owns all rights, title, and interest in and to the 147.90.0.0/16 and 92.68.26.0/24 Blocks, and that L3Harris is the legal and equitable owner of these blocks.

89.     Awarding L3Harris compensatory damages, actual damages, and punitive damages in an amount to be determined at trial, but in no event less than $3,400,000;

90.     Awarding L3Harris its reasonable attorneys' fees and costs to the extent permitted by law and pursuant to Section 501.2105 (i), Florida Statutes.

91.     Awarding L3Harris pre-judgment and post-judgment interest; and

92.     Awarding L3Harris all other relief deemed necessary and just.

## **DEMAND FOR TRIAL BY JURY**

L3Harris demands a trial by jury on all issues so triable.

4891-2000-8849.3

Dated:          November 16, 2023          Respectfully submitted,

*/s/ James V. Etscorn*
James V. Etscorn
Florida Bar No.: 705111
jetscorn@bakerlaw.com
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone:407.649.4000
Facsimile; 407.841.0168
Email: jetscorn@bakerlaw.com

William C. Bergmann
(pro hac vice application to be filed)
Charles C. Carson
(pro hac vice application to be filed)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
Email: wbergmann@bakerlaw.com
          ccarson@bakerlaw.com

Phillip D. Wolfe
(pro hac vice application to be filed)
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103-7501
Email: pwolfe@bakerlaw.com

*Attorneys for Plaintiff*

4891-2000-8849.3